IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALICIA TOKMENKO<br>9072 Avon Belden Road<br>North Ridgeville, Ohio 44039<br><br>Plaintiff,<br><br>v.<br><br>THE METROHEALTH SYSTEM<br>2500 MetroHealth Drive<br>Cleveland, Ohio 44109<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:18-cv-2579<br><br>JUDGE:<br><br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff, Alicia Tokmenko, by and through undersigned counsel, as her Complaint against Defendant, The MetroHealth System, states and avers the following:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 for Tokmenko's claims arising under 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973 ("Section 504")); 42 U.S.C § 12101(a)(7) (Americans with Disabilities Act ("ADA")); 42 U.S.C. § 18116 (Section 1557 of the Patient Protection and Affordable Care Act ("ACA")).

2. Venue is properly in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because (a) the Defendant is located in this judicial district, and (b) a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this judicial district.

## PARTIES

3. Plaintiff Alicia Tokmenko lives in North Ridgeville, Ohio, less than twenty miles from MetroHealth. Tokmenko is Deaf and uses American Sign Language ("ASL") as her primary method of communication. Tokmenko is an "individual with a disability" within the meaning of all applicable statutes and regulations. Tokmenko has previously sought medical services at MetroHealth and would use the healthcare services of MetroHealth again if such services were made accessible to her.

4. At all times material, Defendant The MetroHealth System ("MetroHealth") was and is a corporation and/or other legal entity duly organized and existing pursuant to the laws of the state of Ohio, and operated health care facilities located in Cuyahoga County, Ohio, and held itself out to the public, including Tokmenko, as a provider of medical care services.

5. MetroHealth owns and operates the MetroHealth Main Campus Medical Center located at 2500 MetroHealth Drive, Cleveland, Ohio 44109.

6. MetroHealth is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, and MetroHealth is therefore subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

## FACTUAL ALLEGATIONS

7. Tokmenko incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

8. Tokmenko relies on ASL to effectively communicate with others, including when seeking medical care.

9. ASL is a complete, complex language that employs signs made with the hands and other movements, including facial expressions and postures of the body. It is a language distinct

from English – it is not simply English in hand signals – and has its own vocabulary and rules for grammar and discourse structure.

10. Because of the difficulty many Deaf individuals experience reading and writing the English language, passing notes back and forth is not an effective means of communication under the ADA, Section 504, and the ACA.

11. Because Tokmenko is Deaf, passing of written notes or being provided written instructions are not effective means of communication.

12. When Tokmenko has sought medical treatment from MetroHealth and other providers throughout her lifetime, she has relied on on-site ASL interpreters in order to communicate with health professionals and make informed medical decisions.

13. On or about May 18, 2018, Tokmenko was involved in a motor vehicle accident and sustained a fractured neck.

14. Tokmenko was admitted to MetroHealth for treatment and immediately informed staff, nurses, and doctors at MetroHealth that she is Deaf and wished to communicate using ASL only.

15. In response, MetroHealth placed Tokmenko in a room that had a Video Remote Interpreting ("VRI") machine, however, the process of using the VRI machine to communicate was fraught with difficulties and did not aid Tokmenko in experiencing effective communication with MetroHealth staff, nurses, and doctors.

16. During her 14 day stay at MetroHealth, staff and nurses made just three attempts to get the VRI machine to function properly.

17. Each attempt, the VRI machine did not connect, and if it did connect, the machine froze, lagged, and did not provide any visual picture for there to be any effective communication between Tokmenko and MetroHealth and vice versa.

18. Under the ADA, Section 504, and the ACA, VRI equipment must be operated on a dedicated high-speed video connection to avoid instances of freezing, lagging, or blurry images.

19. Based on Tokmenko's experience during her two week stay, MetroHealth violated the ADA, Section 504, and the ACA requirements that ensure reliable VRI equipment and that staff is properly trained on how to operate VRI equipment.

20. After the third failed attempt to communicate with Tokmenko via the VRI machine, MetroHealth resorted to (1) asking Tokmenko if she could read lips, and (2) deputizing Tokmenko's 15-year-old daughter and parents as ASL interpreters.

21. In general, lip reading is a very difficult and unreliable form of communication. It is extremely challenging to lip-read English because only a small fraction of the sounds used in speaking are clearly visible on the mouth and many sounds appear identical on the lips.

22. In addition to the difficulties in lip reading, the ability to accurately lip-read is greatly affected by the speaker's accent, facial bone structure, facial musculature, facial hair, lighting, distance from the lip reader, and other external factors.

23. Lip reading in not an effective means of communication under the ADA, Section 504, and the ACA.

24. MetroHealth's attempt to deputize Tokmenko's family as interpreters without her permission was unlawful.

25. The Department of Justice specifically cautions against the use of family members or friends as interpreters. 56 Fed. Reg. at 35553.

26. The problems that arise with having a family member or friend interpreting in a medical setting are considerable.

27. Other than the obvious fact that the family member or friend is not a trained ASL interpreter, there may be necessary information that the family member fails to communicate, in a misguided effort to shield the deaf patient.

28. There may be questions the Deaf person will not ask in the presence of the family member or friend.

29. The family member or friend may be too emotionally upset by the medical situation to interpret correctly.

30. Tokmenko's 15- year-old daughter and parents are not qualified ASL interpreters.

31. Tokmenko was unable to effectively communicate with the MetroHealth doctors and nurses throughout her two week stay as they examined and treated her serious injuries.

32. Because MetroHealth did nothing to foster effective communication, Tokmenko was unable to provide doctors and nurses with the full range of information needed to diagnose and treat her.

33. The ADA, Section 504, and the ACA require health care facilities to ensure effective communication with individuals who are Deaf and lay out specific working auxiliary aides that can be utilized.

34. None of the required working auxiliary aides, such as an on-site interpreter, were provided to Tokmenko.

35. Attempting to deputize Tokmenko's friend as a qualified interpreter or reading lips are not means to ensure effective communication.

36. Having to endure any examinations or treatment without effective communication is unacceptable and unlawful under the ADA, Section 504, and the ACA.

37. The discrimination against Tokmenko was intentional, with reckless disregard, and with deliberate indifference to her protected rights.

38. MetroHealth is in close proximity to Tokmenko's home, and because of her continuing need for treatment for the complications related to her serious injuries, it is certain she will have to return in the near future.

39. Tokmenko wants to have effective communication through a qualified on-site ASL interpreter at MetroHealth during her future visits in order to ensure that she receives adequate care.

40. In order to receive Medicaid funding, MetroHealth is required to develop policies and procedure that ensure that persons who are Deaf will receive adequate and effective communication.

41. Each time MetroHealth recertifies for Medicaid funding, it promises that it will provide and adhere to such policies.

42. Upon information and belief, MetroHealth has not provided proper training on the treatment of patients who are hearing impaired.

43. While MetroHealth has access to qualified on-site ASL interpreters, upon information and belief, MetroHealth staff have not had proper training on when they must utilize a qualified on-site ASL interpreter, nor is the process streamlined to ensure interpreting services are easily obtained in a timely manner.

44. MetroHealth does not inform hearing impaired persons of the services that are available for the deaf and hearing impaired, and did not inform Tokmenko of the availability of these services.

### COUNT I
### SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701 et seq.

45. Tokmenko incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

46. Tokmenko is Deaf and her disability substantially limit one or more of her major life activities, including her ability to effectively communicate with others who are not fluent in ASL.

47. Tokmenko is therefore considered to be an individual with a disability under Section 504 of the Rehabilitation Act, as amended.

48. MetroHealth is a recipient of federal financial assistance by virtue of receipt of Medicare and Medicaid payments, as well as other financial assistance.

49. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to be otherwise discriminated against.

50. The doctors, nurses, and all other employees and staff of MetroHealth who interacted with Tokmenko had actual knowledge of her disability, yet, Tokmenko was consistently denied any form of effective communication.

51. Accordingly, MetroHealth discriminated against Tokmenko in the equal use of its facilities, and as a result, Tokmenko experienced mental anguish and humiliation in violation of her civil rights.

52. MetroHealth failed to provide services to Tokmenko as it would have provided a similarly situated hearing patient.

53. MetroHealth's policies, practices, and procedures, particularly the actions and omissions described above, violated Tokmenko's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

54. MetroHealth has discriminated against Tokmenko by failing to provide auxiliary aids and services necessary to ensure effective communication with individuals who are Deaf or hard of hearing in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

55. At all times material, the employees, staff, and agents of MetroHealth would have been able to communicate effectively with Tokmenko if MetroHealth had provided qualified interpreter services.

56. MetroHealth staff knew that Tokmenko would be harmed by their failure to provide an interpreter.

57. As a result of MetroHealth's actions, Tokmenko has been damaged and experienced emotional suffering, pain, and anguish.

58. MetroHealth actions were intentional, with reckless disregard, and with deliberate indifference to the rights and needs of Tokmenko.

**COUNT II**
**TITLE III OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12181 et seq.**

59. Tokmenko incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

60. Tokmenko's hearing loss substantially limits her major life activities, including her ability to effectively communicate.

61. Tokmenko is an individual with a disability under Title III of the Americans with Disabilities Act.

62. Tokmenko meets the essential eligibility requirements for MetroHealth's services at all times material hereto.

63. Tokmenko will likely return to MetroHealth premises in the near future and will be harmed by MetroHealth's discriminatory policies and procedures.

64. MetroHealth violated Title III of the Americans with Disabilities Act in numerous ways, including discriminatory actions which occurred when MetroHealth:

    a. Failed to maintain policies and procedures to ensure compliance with Title III of the Americans with Disabilities Act, specifically policies that provide equal access and effective communication to individuals with disabilities, 28 C.F.R. § 36.303(a) (2010);

    b. Failed to ensure that communications with Tokmenko was as effective as communications with non-disabled patients, 28 C.F.R. § 36.303(a) (2010);

    c. Failed to provide auxiliary aids and services, including a qualified interpreter, and to modify policies and procedures to prevent discrimination against Plaintiff, 28 C.F.R. § 36.303(a) (2010), 28 C.F.R. § 36.302(a) (2010);

    d. Excluded Tokmenko from services of the public entity and denied Tokmenko the benefit of these services due to her disabilities, 28 C.F.R. § 36.202(a) (2010).

65. MetroHealth had knowledge of its obligations under the Americans with Disabilities Act and was deliberately indifferent to the rights of Tokmenko.

66. MetroHealth knew that Tokmenko would be harmed by their failure to provide an interpreter.

**COUNT III**
**SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT, 42 U.S.C. § 18116**

67. Tokmenko incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

68. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), was in full force and effect and applied to MetroHealth's conduct.

69. At all times relevant to this action, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

70. At all times relevant to this action, Tokmenko had substantial limitations to the major life activity of hearing, seeing, and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and Section 1557, 42 U.S.C. § 18116.

71. At all times relevant to this action, Tokmenko's primary language for communication was ASL and not English; and Tokmenko had limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

72. At all times relevant to this action, MetroHealth received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, MetroHealth are health programs or activities receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

73. Pursuant to Section 1557, "an individual shall not, on the grounds prohibited...under section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in,

be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

74. MetroHealth has discriminated and continues to discriminate against Tokmenko solely on the basis of Tokmenko's disabilities and her limited English proficiency denying her meaningful access to the services, programs, and benefits MetroHealth offer to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1157, 42 U.S.C. § 18116.

75. MetroHealth discriminated against Tokmenko by failing to ensure effective communication through the providing of qualified sign language interpreters.

76. As set out above, absent injunctive relief there is a clear risk that MetroHealth's actions will recur again with Tokmenko and other Deaf patients and family members.

77. Tokmenko is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of MetroHealth's intentionally discriminatory conduct as alleged, pursuant to 42 U.S.C. § 18116(a).

78. Tokmenko is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a) and/or common law.

**WHEREFORE,** Tokmenko respectfully prays that this Court grant the following relief against MetroHealth, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that MetroHealth's practices, policies, and procedures have subjected Tokmenko to discrimination in violation of Section 504 of the Rehabilitation Act and Title III of the Americans with Disabilities Act, and permanently enjoin MetroHealth from any practice, policy, and/or procedure which will deny Tokmenko equal access to and benefit

from the MetroHealth's services, or which deny Tokmenko effective communication with the MetroHealth. This includes entering a permanent injunction ordering the MetroHealth:

a. To immediately begin providing Tokmenko with interpreters to ensure she receives adequate healthcare for any other medical issues;

b. To cease discrimination against Tokmenko and all other Deaf or hard of hearing patients;

c. To promulgate and comply with policies and procedures to ensure that the MetroHealth and their staff do not discriminate against individuals who are Deaf or hard of hearing;

d. To promulgate and comply with procedures to ensure that the MetroHealth will provide and pay for interpreter services when needed by individuals who are Deaf or hard of hearing in all services offered by the MetroHealth;

e. To promulgate and comply with procedures to ensure that the MetroHealth will notify individuals who are Deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that state that the MetroHealth will provide ASL interpreters and/or other communication services that ensure effective communication with Deaf or hard of hearing persons;

f. Award compensatory damages to Tokmenko;

g. Award reasonable costs and attorneys' fees; and

    h.  Award any and all other relief that may be necessary and appropriate.

                            Respectfully Submitted,

/s/ *Sean H. Sobel*
Sean H. Sobel (0086905)
Sobel, Wade & Mapley, LLC
2460 Fairmount Boulevard, Ste 314
Cleveland, Ohio 44106
T: (216) 223-7213
F: (216) 223-7213
sobel@swmlawfirm.com

/s/ *Andrew November*
Andrew November (0085018)
Liner Legal, LLC
4269 Pearl Road, Ste 104
Cleveland, Ohio 44107
T: (216) 282-1773
F: (216) 920-999
anovember@linerlegal.com

*Counsel for Plaintiff Alicia Tokmenko*

## **JURY DEMAND**

Plaintiff Alicia Tokmenko demands a trial by jury by the maximum number of jurors permitted.

/s/ *Sean H. Sobel*
Sean H. Sobel (0086905)

*Counsel for Plaintiff Alicia Tokmenko*