UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ALICIA TOKMENKO,** | ) | **CASE NO. 1:18CV2579** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **METROHEALTH SYSTEM,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #28) of Defendant MetroHealth System for Summary Judgment. For the following reasons, the Motion is denied.

**I. BACKGROUND**

Plaintiff Alicia Tokmenko is a deaf individual who was hospitalized at MetroHealth from May 18, 2018 until May 30, 2018, as the result of a motor vehicle accident in which she sustained near fatal injuries, including a broken neck. Plaintiff maintains that she relies primarily upon American Sign Language ("ASL") to communicate with health professionals and to make informed medical decisions. Plaintiff alleges that her mother informed the

hospital liaison of Plaintiff's preference for ASL. During Plaintiff's stay at MetroHealth, the nurses, physicians and staff used a whiteboard or pen and paper to write messages back and forth; Video Relay Interpreting ("VRI") equipment; and Plaintiff's mother and daughter as interpreters. Plaintiff alleges that these methods of communication were not effective – that she can read and write only basic English; that she was in pain and heavily medicated; that the VRI malfunctioned on multiple occasions; and that her mother and daughter are not trained interpreters, especially where technical medical jargon is being used.

Defendant points out that the VRI was available in Plaintiff's room for the length of her entire stay; that Plaintiff declined the use of the VRI and often chose to write messages on the whiteboard supplied to her; that Plaintiff acknowledged that she understood questions from the nursing staff and instructions from physicians; and that Plaintiff never requested the services of an on-site interpreter.

Plaintiff claims that Defendant discriminated against her in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504") 29 U.S.C. § 794; the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101(a)(7); and Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116.

Defendant contends that it is entitled to summary judgment in its favor because: (1) there is no evidence of discrimination; (2) Plaintiff lacks standing to pursue injunctive relief under the ADA; and (3) Plaintiff is not entitled to compensatory damages, because MetroHealth did not act with deliberate indifference.

## II. LAW AND ANALYSIS

### STANDARD OF REVIEW

### Motion for Summary Judgment

A party may move for summary judgment, identifying each claim or defense, on which summary judgment is sought. Fed. R. Civ. P. 56(a). The court may grant summary judgment if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law. *Id*. Subsection (c)(1) of Rule 56 provides the standard for summary judgment:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations [...], admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> Fed. R. Civ. P. 56(c)(1).

Summary judgment is warranted if, after adequate discovery, the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A complete failure of proof regarding an essential element

of the nonmoving party's case renders all other facts immaterial. *Id*. at 323. As a result, the moving party is awarded judgment as a matter of law because the nonmoving party has failed to satisfy his burden of proof and make a sufficient showing on an essential element of his case. *Id*. The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id*. The burden of proof then shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Summary judgment will not granted if the dispute about the fact is genuine. *Id*. A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id*. at 250. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. In ruling on a defendant's motion for summary judgment, the judge's inquiry should be whether a reasonably-minded jury could return a verdict in favor of the plaintiff on the evidence presented. *Id*. at 252.

The court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996).

**Americans with Disabilities Act**

ADA Title II provides that "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

**Rehabilitation Act**

Section 504 provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).

The analysis of Rehabilitation Act claims "roughly parallels" ADA claims because the statutes contain similar language and are "quite similar in purpose and scope." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459–60 (6th Cir.1997).

**Affordable Care Act**

The ACA states, in relevant part, that: "an individual shall not, on the ground prohibited under ... section 504 of the Rehabilitation Act of 1973, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance[.]" 42 U.S.C. § 18116(a).

**Duplicative claims**

According to Defendant, a reading of Plaintiff's Complaint illustrates that all of her claims are premised upon the sole contention that MetroHealth failed to provide effective auxiliary aids and services to accommodate her disability during her May 2018 hospitalization, allegedly resulting in a denial of meaningful access to the full and

equal enjoyment of MetroHealth's facilities, services, or programs. Thus, Defendant asks the Court to dismiss all but one of Plaintiff's claims as they are duplicative and because Plaintiff is entitled to just one recovery.

The Court recognizes that, although Title III of the ADA applies only to "places of public accommodation," and the Rehabilitation Act requires that defendants receive Federal financial assistance, the ADA and the Rehabilitation Act are analyzed under the same legal framework. *Babcock v. Michigan*, 812 F.3d 531, 540 (6th Cir. 2016); *McPherson*, 119 F.3d 459-60. Moreover, the ACA incorporates the relevant provisions of the Rehabilitation Act.

In addition, the Court acknowledges that a party is not entitled to recover twice for the same loss, even if the party would otherwise be able to recover for that loss under separate theories of liability. *See, e.g., General Tel. Co. v. EEOC*, 446 U.S. 318, 333, 100 S.Ct. 1698, 1708, 64 L.Ed.2d 319 (1980) (discussing double recovery in Title VII context). Under the same equitable tenets that underlie unjust enrichment, it is error to award damages under more than one theory for the same harm. *Armstrong v. Shirwell*, 596 F.App'x 433, 451 (6th Cir. 2015).

Nonetheless, there are important distinctions among the three statutory claims. Although injunctive relief can be fashioned to remedy a plaintiff's harm under the ADA, no monetary damages are available under the ADA. *Southwell v. Summit View of Farragut, LLC*, 494 F.App'x 508, 512 (6th Cir. 2012); Miller, 2019 WL 6115211 at *7. Compensatory damages are recoverable, however, under the Rehabilitation Act upon a showing of intent to discriminate. *Hill v. Bradley Cty Bd. of Educ.*, 295 F.App'x 740, 742 (6th Cir. 2008). As mentioned, the ACA requires the Court to look to section 504 of the Rehabilitation Act when

deciding whether a plaintiff is entitled to recover; so, both the ACA and the Rehabilitation Act must be analyzed in tandem.

Therefore, although much of the analysis of Plaintiff's ADA, Rehabilitation Act and ACA claims may be redundant, the remedies are not the same. The Court finds that dismissal of all but one of Plaintiff's claims, as sought by Defendant, is not warranted.

**Effective communication**

Pursuant to 28 C.F.R. § 36.303(a) and (c)(1), a hospital must "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." "A public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication, but the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication." 28 C.F.R. § 36.303(c)(1)(ii). "The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." *Id.*

As the court in *Miller v. Christ Hospital*, No. 1:16CV937, 2019 WL 6115211, *4 (S.D.Ohio Nov. 18,2019) notes: "Available auxiliary aids for deaf individuals include qualified in-person interpreters, VRI, computer-aided transcription services, written materials, and the exchange of handwritten notes." (Citing *Bustos v. Dignity Health*, No. CV-17-02882-PHX-DCG, 2019 WL 3532158, at *2 (D. Ariz. Aug. 2, 2019)).

"[A] deaf patient 'may need a qualified interpreter to discuss with hospital personnel a

diagnosis, procedures, tests, treatment options, surgery, or prescribed medication[,]' whereas a person with the same disability 'who purchases an item in the hospital gift shop may need only an exchange of written notes to achieve effective communication.'" *Bustos*, 2019 WL 3532158, at *3 (quoting *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 343 n.5 (11th Cir. 2012)).

"A hospital that chooses to use VRI must ensure that it provides video and audio over a connection that delivers 'clear, audible transmission of voices' and 'high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication[.]'" *Miller*, 2019 WL 6115211 at *5; *Bustos*, 2019 WL 3532158, at *2.

Defendant offers evidence that the VRI equipment was in Plaintiff's room from May 20, 2018 through her discharge on May 30, 2018. Moreover, Plaintiff made use of the VRI on three occasions for her mental health evaluation. Defendant also shows that Plaintiff was willing and able to use the whiteboard to write messages back and forth with the nursing staff. At times, Plaintiff's mother and daughter interpreted for the doctors and nurses.

Plaintiff establishes that, hours after she was admitted, her mother made her preference for sign language known to Defendant through Janice Buildt, a medical social worker and liaison between hospital staff and families. Plaintiff's chosen method of communication was entered into the computer system of the hospital and was accessible to anyone providing Plaintiff with treatment there. Plaintiff suffered critical injuries and was in pain and heavily medicated during her stay; thus, at a minimum, her comprehension was impaired. The VRI equipment malfunctioned on several occasions, that is, it "froze up," lagged and went off and on. Plaintiff struggled and could not read the signing consistently

through that technology. She told the medical staff that live interpreting would be better. (Tokmenko Deposition, ECF DKT #18, p. 48). Plaintiff was not provided an ASL interpreter at the time of her discharge or at follow-up appointments.

"Because the assistance required to ensure effective communication will vary based on the specific circumstances surrounding each interaction, 'the task of determining whether an entity ... has provided appropriate auxiliary aids where necessary is inherently fact-intensive.'" *Miller*, 2019 WL 6115211 at *5; *Liese*, 701 F.3d at 342. "Generally, the effectiveness of auxiliary aids and [ ] services is a question of fact precluding summary judgment." *Miller*, *id*.; *Bustos*, 2019 WL 3532158, at *3. While communication need not be perfect, the pertinent statutory regulations require that hospitals afford a level of communication to a deaf patient about medically relevant information that is substantially equal to that afforded to non-disabled patients. *Id*.; 45 C.F.R. § 84.4.

Construing all evidence in favor of Plaintiff, reasonable jurors could find that the Defendant failed to provide a level of communication substantially equal to that afforded to non-disabled, hearing patients.

**Standing**

Defendant argues that Plaintiff lacks the requisite standing to pursue injunctive relief under the ADA.

Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff must show three things to demonstrate standing: 1) an injury in fact that is concrete and particularized, as well as actual or imminent; 2) a causal relationship between the injury and

the complained-of conduct; and 3) a likelihood that the injury can be redressed by a decision in the plaintiff's favor. *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *N.E. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663-64 (1993).

In the context of this case and to demonstrate entitlement to injunctive relief, Plaintiff must not only show a past injury but also a real and immediate threat of future injury. *Mosley v. Kohl's Department Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019). A plaintiff can demonstrate the requisite threat of future injury by establishing "a plausible intent to return to the noncompliant accommodation." *Mosley*, 942 F.3d at 757; *Miller*, 2019 WL 6115211 at *6. Defendant insists that Plaintiff does not meet this burden.

Following a near-fatal motor vehicle accident, Plaintiff was life-flighted to MetroHealth. By her own testimony, she was in and out of consciousness for the first few days and had little memory of that time period. (Tokmenko Deposition, ECF DKT #18, p. 29). Thus, Defendant contends that Plaintiff could not have voluntarily chosen the services of MetroHealth.

Defendant's' Assistant General Counsel avers that Plaintiff has not received treatment at MetroHealth since December 2007. (Declaration of Beth Nagel, ECF DKT #25). Further, Plaintiff testified to treatments she received in the past at Cleveland Clinic, University Hospitals and Elyria medical facilities. (Tokmenko Deposition, ECF DKT #18, pp. 26-28). There certainly has not been a pattern of using MetroHealth facilities or physicians.

Lastly, Defendant asserts that Plaintiff's Declaration (ECF DKT #34-13) is self-serving and cannot establish a plausible intent to return to MetroHealth.

However, according to the Sixth Circuit, the question of plausible intent to return to the accommodation is resolved by examining a plaintiff's allegations and any inferences that follow. *Mosley*, 942 F.3d at 759. Plaintiffs are not required to provide a definitive plan for returning to the accommodation itself to establish a threat of future injury. *Mosley*, 942 F.3d at 760. Nor are plaintiffs required to have visited the accommodation more than once. *Mosley*, 942 F.3d at 760.

It is undisputed that MetroHealth is the only Level 1 Trauma Center on the west side of Cleveland, Ohio. Plaintiff states that MetroHealth has a number of locations convenient to her residence. (Tokmenko Declaration, ECF DKT #34-13). The MetroHealth System already has her patient records. *Id*. Dr. Timothy Moore, a MetroHealth physician, indicated in his treatment notes for Plaintiff post-discharge that she can follow up with him as needed or when necessary. (ECF DKT #35-2). Plaintiff avers that she would return to MetroHealth if an on-site ASL interpreter were provided. (ECF DKT #34-13).

The Court finds that Plaintiff has met her burden of showing a plausible intent to return to MetroHealth; and therefore, has established an injury-in-fact to satisfy Article III standing to proceed with her ADA claims for injunctive relief.

**Monetary damages**

Under the Rehabilitation Act, compensatory damages are available upon "a showing of intent to discriminate." *Hill*, 295 F.App'x at 742. To prove intent to discriminate for Rehabilitation Act purposes, a plaintiff must prove a defendant acted with "deliberate indifference." *Id*.

"Deliberate indifference requires both knowledge that a harm to a federally protected

right is substantially likely, and a failure to act upon that likelihood." *Tanney v. Boles*, 400 F.Supp.2d 1027, 1047 (E.D.Mich. 2005), quoting *Kennington v. Carter*, 2004 WL 2137652, *7 (S.D.Ind.2004). There are two standards for deliberate indifference in the Rehabilitation Act context:: 1) notice that an accommodation is required, and 2) a failure to act that is a result of conduct that is more than negligent and involves an element of deliberateness. *Tanney, id.; Kennington*, *id*.

"[A] hospital's failure to provide an interpreter on demand is not sufficient to support a finding of deliberate indifference ... Rather, a plaintiff must show that hospital staff knew there was a substantial likelihood that they would be unable to communicate effectively absent an interpreter, but still made a 'deliberate choice' not to provide one." *Miller*, 2019 WL 6115211 at *7, quoting *Martin v. Halifax Healthcare Sys., Inc*., 621 F.App'x 594, 604 (11th Cir. 2015).

Defendant demonstrates that the VRI equipment was in Plaintiff's room, and available for her use, throughout the length of her stay — May 20, 2018 to May 30, 2018. According to one of her attending nurses, Steven Mattis, a malfunctioning VRI was replaced with a functioning device on May 24, 2018; and this is confirmed by the VRI logs. (Michelle Mencke Declaration, ECF DKT #28-2). On the day of her discharge, Plaintiff indicated "no" to the VRI when Nurse Ashley Rozman began to provide her with instructions for returning home. (Rozman Deposition, ECF DKT #21, pp. 47-49). Rozman "honored the patient's refusal" and used the whiteboard with Plaintiff's mother present. *Id*.

Plaintiff admits that she rarely used the VRI, even though it was available to her the entire time. (Tokmenko Deposition, ECF DKT #18, p.49). She also concedes that she never

complained about communication problems with her providers to anyone at MetroHealth while she was hospitalized nor after her discharge. (Tokmenko Deposition, ECF DKT #18, p. 59). The Language Access Department at MetroHealth did not receive an on-site interpreter request during the Plaintiff's stay. (Mencke Deposition, ECF DKT #22, p. 90).

In support of her Rehabilitation Act Claim, Plaintiff provides evidence that, her mother advised Janice Buildt, the hospital liaison, that Plaintiff "reads lips but prefers to sign." (Buildt Deposition, ECF DKT #32, p.30). This notation was entered into Epic, the computerized system accessible to nurses and physicians on staff, on May 19, 2018. (*Id.* at p.31).

Michelle Mencke leads the Language Access Services Team in MetroHealth's Office of Patient Experience. In her training presentations, she counsels hospital staff that "when in doubt" as to effective communication with patients, they should use interpreters and use the Language Access Services. (Mencke Deposition, ECF DKT #22, p.78).

Plaintiff offers the expert report of Judy Shepard-Kegl, PH.D. (ECF DKT #33). Dr. Kegl tested Plaintiff's reading, writing and comprehension skills; and concludes in her report that Plaintiff's speech is virtually unintelligible and that she reads at a first- or second-grade level. In Kegl's opinion, Plaintiff's vocabulary and grammar skills are significantly better when she communicates by the use of ASL.

Plaintiff's mother, Kathy Dalton, testifies that she made complaints to nurses on the floor about her daughter's communication problems, although Dalton was unable to provide names of the nurses or specific dates and times. (Dalton Deposition, ECF DKT #19, p. 16-19). On one occasion, Dalton informed the nurses that her daughter was in significant pain

but Plaintiff was unable to communicate what the issue was. It turned out that her epidural disconnected and was not providing needed pain medication in her back. (*Id*. at p. 21).

Plaintiff specifically testifies that the VRI equipment was "really horrible." (Tokmenko Deposition, ECF DKT #18, p.45). It continually froze up and went off-and-on so that she could not read the interpreter on the screen. (*Id.* at pp. 43, 45, 46,47). The providers wrote on paper and paper seemed easier for them. (*Id*. at pp. 45, 49). Plaintiff testifies that her injuries did not allow her to move her neck to see the VRI screen and so, a live interpreter would have been preferable. (*Id*. at pp. 48, 58).

Plaintiff also testifies that her mother requested an interpreter when she scheduled follow-up appointments with Defendant's physicians, but none was provided. (*Id*. at pp. 54-56).

The physician, who conducted a psychiatric evaluation of Plaintiff using the VRI in the hospital, recommended a follow-up with a therapist who knows ASL. (ECF DKT #35-8).

Because Plaintiff has offered evidence that Defendant had notice of a necessary accommodation but that Defendant's actions, services and auxiliary aids resulted in ineffective communication between Plaintiff and her medical providers at MetroHealth, reasonable jurors could find that Defendant essentially failed to act to protect Plaintiff's rights as a deaf person. Further, a jury could reasonably find an element of deliberateness making discrimination by Defendant and against Plaintiff likely, as prohibited by Section 504 of the Rehabilitation Act. Accordingly, issues of fact preclude summary judgment on the Plaintiff's claim for monetary compensation.

## III. CONCLUSION

For these reasons, the Motion (ECF DKT #28) of Defendant MetroHealth System for Summary Judgment is denied.

**IT IS SO ORDERED.**

**DATE: 9/21/2020**

                                 s/Christopher A. Boyko
                                 **CHRISTOPHER A. BOYKO**
                                 **Senior United States District Judge**